IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA          :
                                  :
            v.                    :     Criminal No.: 16-CR-171
                                  :
LABIB CHAMMAS,                    :
                                  :
            Defendant.            :

## STATEMENT OF THE OFFENSE

The parties in this case, the United States of America and the defendant, Labib Chammas, stipulate and agree that the following facts are true and accurate. These facts do not constitute all of the facts known to the parties concerning the charged offense; they are being submitted to demonstrate that sufficient facts exist that the defendant committed the offense to which he is pleading guilty.

1.   Labib Chammas is a naturalized U.S. Citizen whose wife was formerly a State Department employee, the Deputy Chief of Mission ("DCM") from the United States to Morocco. From August 2010 until February 15, 2013, Chammas resided with his wife in housing owned by the U.S. State Department in Rabat, Morocco, while his wife was assigned to the U.S. Embassy in Rabat.

2.   All relevant events took place within the country of Morocco and within the Special Maritime and Territorial Jurisdiction of the United States, pursuant to Title 18, United States Code, Section 7(9)(b) and, pursuant to Title 18, United States Code, Section 3238. Specifically, all events

took place within a residence used for the purpose of the U.S. diplomatic mission and used by United States personnel assigned to those missions (herein the "DCM Residence").

3. When the defendant and his wife moved into the DCM Residence in or about August 2010, three household employees were employed there. The defendant and his wife maintained the employ of each of these household staff members during their tenure at the DCM Residence from August 2010 until February 2013. Each of the employees was a Moroccan national who had worked at the DCM Residence and for the Embassy for well over a decade and throughout the tenure of at least the five prior DCM administrations. The defendant took on responsibility for overseeing the day-to-day work of these employees. According to the employees, the defendant was an abusive head-of-household, frequently yelling at the employees, demeaning them, and telling them that they would be fired for failing to live up to his expectations. The employees lived in constant fear that they would lose their jobs.

4. Among the household staff overseen by the defendant at the DCM Residence was a female cook (hereafter the "victim"), who had worked at the DCM Residence for 16 years by the time the defendant moved into the DCM Residence. The victim, an unmarried Muslim woman, was 53 years old at the time, had a third grade education, and was the sole source of support for her entire family including her elderly parents and several of her siblings and their children, who all lived together in a single residence in Rabat.

5. Shortly after moving into the DCM Residence in August 2010, the defendant began asking the victim to massage his legs, hip, and back although this was not one of the victim's job duties at the DCM Residence. The victim complied, providing these massages to the defendant in an effort to maintain her employment. During the course of demanding these massages, the defendant

began escalating his behavior by removing his clothing and exposing his penis to the victim, demanding that she "massage" his penis using her hands. The victim initially refused and then told the defendant on numerous occasions that she did not want to do so.

6. However, the defendant continued to press the victim to massage his penis and she eventually complied out of fear that she would lose her job if she refused. The defendant knew, and should have known, the victim complied with his demand only because she was fearful that she might otherwise lose her job. In addition to threatening to fire the victim from her job, on a number of these occasions, the defendant would physically place the victim's hands on his penis, and instruct her to masturbate him, even though she did not want to do so.

7. The victim did not want to engage in these acts, but under constant fear of being fired from her job, she did as she was instructed and masturbated defendant to ejaculation. The defendant asked the victim to perform these "massages" on his penis frequently.

8. On at least five occasions between on or about August 2010 and February 2013, while the defendant told the victim to manually masturbate him, the defendant attempted to insert his penis into the victim's mouth against her will, and thereby made contact with the victim's mouth by his penis. In each of these incidents, the defendant took the victim by her head or hair and pulled, or attempted to pull, her head down toward his penis. In each instance, the victim tightened her lips to prevent his penis from entering her mouth or turned her face to the side. These incidents occurred at the DCM Residence, among other times, under the following circumstances:

(a) in the kitchen, where the defendant told her to put her hands on his penis and testicles and then he attempted to put his penis into her mouth;

(b) in the bathroom, where the defendant took the victim by the hands, pulled her into the

bathroom, put her hands on his penis, and attempted to have her put his penis in her mouth;

(c) during Ramadan in 2012, when the victim was trying to leave the DCM Residence to be with her family, the defendant called the victim to the garden and again put her hands on his penis and attempted to put his penis into her mouth;

(d) in December 2012, while the victim was home recovering from surgery to remove a tumor from her neck, the defendant called her to the DCM Residence, where, once she arrived, the defendant grabbed her wrists, putting her hands on his penis and then attempted to put his penis into her mouth by pulling her head down; and

(e) again in the TV room in February 2013, where the defendant took her by the wrists, placed her hands on his penis, made her rub it, and then pulled her head down toward his penis which touched the side of her face.

During these incidents, the defendant ejaculated and then told the victim to clean it up. In each of these incidents, the defendant knew, and should have known, that the victim did not want to perform oral sex on him.

9.   The victim did not disclose the above abuse out of fear of losing her job. The above conduct was reported by anonymous letter and came under investigation as a result. The defendant was interviewed in the course of the investigation and admitted in early interviews that the victim gave him massages, touched his penis, and that she may have touched his penis with her face. He also acknowledged that he ejaculated on multiple occasions.

4

I, LABIB CHAMMAS, HERBY CERTIFY AND DECLARE THAT ALL OF THE FACTS SET FORTH ABOVE IN THIS FACTUAL PROFFER ARE TRUE AND CORRECT.

9/24/16
Date

*[signature]*
LABIB CHAMMAS
Defendant

I have carefully and completely reviewed this Factual Proffer with my client, LABIB CHAMMAS, and he agrees that each of the facts set forth above is true and correct.

9/26/16
Date

*[signature]*
Robert Spagnoletti
Counsel for LABIB CHAMMAS

For the United States:

10/12/16
Date

*[signature]*
Andrea Hertzfeld
Assistant United States Attorney

10/12/2016
Date

*[signature]* Stacey Luck/JBP
Stacey Luck
Special Counsel

5